## Case No. 7,113.

The IVANHOE.

The MARTHA M. HEATH.

[7 Ben. 213.] [1]

District Court, S. D. New York. March, 1874.

W. J. Haskett, for the Pilgrim.

W. W. Goodrich, for the Heath.

W. R. Beebe, for the Ivanhoe.

BLATCHFORD, District Judge. These two libels grow out of a collision which took

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

place in the East river, opposite New York, on the 13th of February, 1872, about ten o'clock a. m. The barge Pilgrim was being towed up the river by the steamboat P. C. Shultz by a hawser astern. The steamboat Ivanhoe was going down the river. The schooner Martha M. Heath was being towed down the river by the steamtug Niagara by a hawser astern. The Pilgrim came into collision with the Martha M. Heath, and both of those vessels were damaged.

The libel in the first case is filed by the owners of the Pilgrim against the Ivanhoe and the. Martha M. Heath. It alleges that the tide was flood; that, when the Pilgrim came opposite to pier 4, being towed up, the Niagara, towing the Heath, was coming down, and the Ivanhoe was coming down close to the docks; that the Ivanhoe, when about abreast of the Heath, sheered over towards the Heath, and the person in command of the Ivanhoe ordered the Heath to hard a-starboard her helm, which was done; that, just when the Heath had got a port sheer on her, the Ivanhoe struck the bow of the Heath and increased such sheer, so that the Heath struck the Pilgrim on her port side near the bow, and damaged her; and that the collision was the fault of the Ivanhoe, in running. close to the docks, and in not being manageable, and the.fault of the Heath in not keeping her course, and in not having a proper lookout.

The answer of the Ivanhoe to the libel in the first case sets forth that, when the Ivanhoe was about opposite pier 4, the barge Bontecou, in tow, by a hawser, of the tug Levy, was being taken into the dock and came opposite the bow of the Ivanhoe, and so near that the Ivanhoe was compelled to stop and lie still; that, just then, the master of the Ivanhoe saw the Heath sheering down on the quarter of the Ivanhoe, and so near as to threaten an almost immediate collision; that the Ivanhoe was not then within 300 feet from the dock, nor in any place in violation of law; that the master of the Ivanhoe asked the master of the Heath if she meant to run into him, but did not order her to hard a-starboard her helm; that the Heath did starboard her helm, and so, being sheered and caught by the tide, collided with the Pilgrim, without any fault in the Ivanhoe; that the Ivanhoe did not strike the Heath; that the Heath ought to have been towed alongside instead of by a hawser; that the accident was occasioned partly by the inability, caused as aforesaid, of the Ivanhoe to pursue her course, in which she was not in fault, partly because the Pilgrim did not sheer away from the Ivanhoe and the Heath, and partly by the force of the tide on the Heath when the Heath made her sheer; and that the Ivanhoe used all possible care to save her from collision with any other vessel, consistent with her situation under the circumstances.

The answer of the Heath to the libel in the first case avers, that the Heath was being towed out from her berth at pier 10, East river, to go to sea; that, after her course was straightened down the river, the Ivanhoe came down the river, passing between the Heath and the New York shore; that, as the Niagara and the Heath were passing pier 4, the Ivanhoe sheered over towards the Heath, and struck her on the starboard bow, breaking the hawser by which she was being towed, and driving her against the Pilgrim; that by means of the two collisions the Heath was damaged; and that the collision was not the fault of the Heath, which had a proper lookout. but was occasioned by the fault.of the Ivanhoe or of the Niagara.

The libel in the second case is filed by the owners of the Heath. It was brought against the Ivanhoe and the Niagara, but the Niagara has not been served with process. It contains, in substance, the same allegations as to the collision, that are found in the answer of the Heath to the libel in the first case.

The answer of the Ivanhoe in the second case is in substance the same as her answer in the first case.

It was stipulated between the parties at the trial, that the court might, under the pleadings, find any one or more or all of the seven vessels mentioned in the pleadings to have been in fault as causing or contributing to the collision, notwithstanding the absence, in any one or more of the pleadings, of any allegation of fault, general or specific, in respect to any one or more of said vessels.

There is some conflict of testimony in the case, but I do not deem it necessary to discuss the evidence in detail. It is sufficient to say, that the clear weight of the evidence, under the principles of law properly applicable to this case, throws all the responsibility for the collision upon the Ivanhoe. She was the overtaking vessel. As she came down she saw ahead of her the Heath being taken out of her berth by the Niagara. She endeavored to pass by the Heath and the Niagara, going at a greater speed than they were going. As regarded the Ivanhoe, in such attempt of hers, the Heath and the Niagara constituted one vessel. She failed to go by and pass around them, and, in the effort to do so, found the barge towed by the Levy to be an obstruction in the way, which forced her to stop. She deliberately chose to go inside of the Heath and the Niagara, and between them and the piers on the New York side. It was her close proximity to the piers which left her no room to pass between the stern of the barge towed by the Levy and the Niagara followed by the Heath. Therefore she stopped. In doing so, she suffered herself to come into immediate proximity to the Heath. No reason is shown why she did not bear to the right. when she stopped, so as to carry her away from the Heath, which was coming down the river on the left. The Niagara and the

Heath were proceeding on, in the same course they were on when the Ivanhoe had gone by the Heath. The Ivanhoe, when she stopped, sagged towards the Heath. She feared a collision with the Heath. She directed the Heath to starboard. I do not deem it of material importance whether the Ivanhoe, by striking the Heath, shoved the Heath over against the Pilgrim, or by shoving her aided in sending her against the Pilgrim, or whether the Heath went over by starboarding. The Heath did starboard. The weight of the evidence is that the Ivanhoe struck the Heath a severe blow on the starboard side of the Heath. The Heath, in the apprehension of a collision with the Ivanhoe, a larger vessel, and urged, moreover, by the order to starboard coming from the Ivanhoe, might well starboard, in the exigency, to clear the Ivanhoe and let her drop astern. It is exceedingly probable that the starboarding of the Heath against the flood tide, with the headway she had, caused her to sheer more than was intended either by herself or by the Ivanhoe. But, for all this the Ivanhoe is primarily responsible. She ought not to have been passing inside of the Heath and the Niagara, so close to the docks that, on an emergency like that which did happen, she could not, if that were the case, prevent herself from coming in contact with the Heath. The barge which came to obstruct her way was being taken to a slip which barges of that kind frequented, and it was reasonably to be apprehended that such a vessel might come around from the North river and be going in there. The Ivanhoe was on her way from the Wallabout to Jersey City, and there was no good reason for her hugging the New York docks on her way down. The middle of the river, or a position further out than she was, was her place. She was doing what I find constantly vessels navigating the narrow strait of the East river up and down will persist in doing, in order to avoid a head tide. The law requires them to go as nearly as may be in the middle of the river, when navigating up or down through the lengthwise course of the river. The crowded state of the river, the frequent passage in and out of the ferry slips of the numerous ferry-boats, the transit in and out of the slips of other vessels, the convenience of small water craft lying off the ends of piers—these considerations have led to the establishment of the rule for the East river, and it is for the courts to enforce it. This is a most marked case for its application. The violation of the rule was the direct cause of this collision. There was no fault in any of the other vessels. The Levy and her barge had a right to do as they did. The Pilgrim and her tug were going up a proper distance out in the river. The Pilgrim sheered to the starboard by porting as soon as she perceived the sheer of the Heath. The Niagara and the Heath had just started from their pier, and could not

well be farther out than they were. They kept their course till the Heath was driven out of it by the Ivanhoe, and the Niagara stoppel as soon as she was required to do so.

The libel in the first case must be dismissed as to the Heath, with costs, and in each case there must be a decree against the Ivanhoe, with costs, with a reference to ascertain the amount of the damages to be recovered by the libellants.